5 F.3d 1255
 26 Fed.R.Serv.3d 1428, 85 Ed. Law Rep. 1070,
Prod.Liab.Rep.(CCH)P 13,640
 SCHOOL DISTRICT NO. 1J, MULTNOMAH COUNTY, OREGON, Plaintiff-Appellant,
v.
ACandS, INC., a Pennsylvania corporation, et al.; E.J.
Bartells Company, a Washington corporation; A.P.
Green Refractories Company,
Defendants-Appellees.
SCHOOL DISTRICT NO. 1J, MULTNOMAH COUNTY, OREGON, Plaintiff-Appellant,
v.
ACandS, INC., a Pennsylvania corporation, et al., Defendants,
and
Fibreboard Corp., a Delaware corporation as successor in
interest to The Paraffine Companies, Inc., Pabco Products,
Inc., Fibreboard Paper Products Corporation, Plant Rubber &
Asbestos Works and Plant Rubber & Asbestos Co.,
Defendants-Appellees.
SCHOOL DISTRICT NO. 1J, MULTNOMAH COUNTY, OREGON, Plaintiff-Appellant,
v.
ACandS, INC., a Pennsylvania Corporation; Armstrong Cork
Company, Inc., a Delaware Corporation; Atlas
Asbestos Company, Inc., a Canadian
Corporation, et al., Defendants,
and
Keene Corporation, a New York Corporation individually and
as successor in interest to the Baldwin Ehret Hill
Company, Defendant-Appellee.
SCHOOL DISTRICT NO. 1J, MULTNOMAH COUNTY, OREGON, Plaintiff-Appellant,
v.
ACandS, INC., a Pennsylvania Corporation; Armstrong Cork
Company, Inc., a Delaware Corporation; Atlas
Asbestos Company, Inc., a Canadian
Corporation, et al., Defendants,
and
US Gypsum Company, a Delaware Corporation, Defendant-Appellee.
SCHOOL DISTRICT NO. 1J, MULTNOMAH COUNTY, OREGON, Plaintiff-Appellant,
v.
ACandS, INC., a Pennsylvania Corporation; Armstrong Cork
Company, Inc., a Delaware Corporation; Atlas
Asbestos Company, Inc., a Canadian
Corporation, et al., Defendants,
and
Owens-Corning Fiberglass Corporation, Defendant-Appellee.
SCHOOL DISTRICT NO. 1J, MULTNOMAH COUNTY, OREGON, Plaintiff-Appellant,
v.
ACandS, INC., a Pennsylvania Corporation; Armstrong Cork
Company, Inc., a Delaware Corporation; Atlas
Asbestos Company, Inc., a Canadian
Corporation, et al., Defendants,
and
Flintkote Company, a Delaware Corporation, Defendant-Appellee.
SCHOOL DISTRICT NO. 1J, MULTNOMAH COUNTY, OREGON, Plaintiff-Appellant,
v.
ACandS, INC., a Pennsylvania Corporation; Atlas Asbestos
Company, Inc., a Canadian Corporation, et al., Defendants,
and
Armstrong Cork Company, Inc., a Delaware Corporation,
Defendant-Appellee.
 Nos. 91-36275, 92-35127, 92-35549, 92-35552 to 92-35555.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 12, 1993.
Decided Sept. 24, 1993.
 
 Kevin N. Keaney, Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, OR, for plaintiff-appellant.
 Ronald Scott Bemis, Stafford, Frey, Cooper and Stewart, Seattle, WA, and Christopher A. Rycewicz, Stafford, Frey, Cooper & Stewart, Portland, OR, for defendant-appellee Fibreboard.
 Joseph C. Arellano and Garr M. King, Kennedy, King & Zimmer, Portland, OR, for defendant-appellee Keene.
 Stuart D. Jones and I. Franklin Hunsaker, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for defendant-appellee Flintkote.
 Katherine Steele, Madden, Poliak, MacDougall & Williamson, and John Dudrey, Williams, Fredrickson, Stark & Weisensee, Seattle, WA, for defendant-appellee Bartells.
 Duane A. Bosworth, Davis Wright Tremaine, Portland, OR, for defendants-appellees Armstrong Cork Co., Inc. and Armstrong World Industries, Inc.
 Laurie D. Kohli, George, Hull, Porter & Kohli, P.S., Seattle, WA, and Janice M. Stewart, McEwen, Gisvold, Rankin & Stewart, Portland, OR, for defendant-appellee ACandS.
 Rex Armstrong and Richard A. Hayden, Bogle & Gates, Portland, OR, and Thomas M. Kittredge, Morgan, Lewis & Bockius, Philadelphia, PA, for defendant-appellee U.S. Gypsum.
 William M. Tomlinson and James L. Dumas, Lindsay, Hart, Neil & Weigler, Portland, OR, for defendant-appellee Owens-Corning.
 Appeals from the United States District Court for the District of Oregon.
 Before: FARRIS, FERGUSON and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 These consolidated appeals arise from complaints filed by School District 1J, Multnomah County, Oregon (the "School District"). The School District sought to recover the cost of removing asbestos-containing products from over 100 school buildings. The defendants are installers and manufacturers of asbestos products. In a series of rulings in these cases, the district court granted summary judgment and partial summary judgment in favor of two installers and six manufacturers. It ordered final judgments entered as to those matters pursuant to Federal Rule of Civil Procedure 54(b). The School District appeals. We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 STANDARD OF REVIEW
 
 2
 "A grant of summary judgment is reviewed de novo to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there exist any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 (9th Cir.1990).
 
 INSTALLER DEFENDANTS
 
 3
 ACandS, Inc. and E.J. Bartells, Co., two of the installer defendants, installed asbestos-containing products in the School District's school buildings beginning in the 1940s. ACandS's last installation was in 1962; Bartells's in 1970. The School District sued these installers in 1989. The district court held that the Oregon statute of ultimate repose for contractors, Or.Rev.Stat. ("O.R.S.") Sec. 12.135(1) (1991),[1] applied to ACandS and Bartells. Under this statute, suits against contractors for defects in their work must be commenced within ten years of substantial completion or abandonment of the project. Because the School District did not file its complaint against ACandS and Bartells within ten years from the date they last installed asbestos in the school buildings, Oregon's statute of ultimate repose for contractors barred the School District's claims.
 
 
 4
 The School District contends that O.R.S. Sec. 12.135(1) does not apply to ACandS and Bartells because they were not contractors, but rather they were distributors or suppliers of asbestos products. The School District contends its claims are product liability claims, which are exempt from any statute of ultimate repose. Alternatively, the School District argues that the Oregon statute of ultimate repose for contractors, which was enacted in 1971, does not apply retroactively to the work done by ACandS and Bartells, who completed their installation of asbestos in the school buildings by 1962 and 1970, respectively.
 
 
 5
 A. Are ACandS and Bartells within the ambit of O.R.S. Sec. 12.135(1)?
 
 
 6
 During the same years that they installed asbestos in the school buildings, ACandS and Bartells also sold asbestos products directly to some consumers, without participating in any actual installation. It is undisputed, however, that the only asbestos ACandS and Bartells ever supplied to the School District was asbestos they installed in school buildings pursuant to their installation contracts. ACandS and Bartells are covered by Oregon's statute of ultimate repose for contractors, which applies to "person[s] ... having performed the construction, alteration or repair of any improvement to real property." O.R.S. Sec. 12.135(1).
 
 
 7
 B. Does Oregon's statute of ultimate repose for contractors apply retroactively to the installation of asbestos by ACandS and Bartells?
 
 
 8
 In resisting retroactive application of O.R.S. Sec. 12.135(1), the School District relies on a number of cases which have held that "retroactive application of a change in the limitations period is not permitted under Oregon law absent clear contrary legislative intent." Boag v. Chief of Police, City of Portland, 669 F.2d 587, 588 n.* (9th Cir.), cert. denied, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982). See alsoBoone v. Wright, 314 Or. 135, 836 P.2d 727, 729 (1992); Bergstad v. Thoren, 86 Or.App. 70, 738 P.2d 223, 225 (1987).
 
 
 9
 These cases apply only to limitations periods, which are distinguishable from statutes of ultimate repose such as section 12.135(1). In the typical limitations context, when an injury occurs the injured party gains a right to seek a recovery. This right may be exercised within the time frame of the applicable limitations period. Before applying new legislation retroactively to diminish this limitations period, Oregon requires retroactivity to be expressly intended.
 
 
 10
 Unlike a limitations period, O.R.S. Sec. 12.135(1) is a statute of ultimate repose which runs from the date of substantial completion or abandonment of construction without regard to the occurrence of any actual loss or injury. The statute reflects the policy judgment of Oregon to relieve a contractor of the risk of loss from construction projects after a substantial period of time, here ten years. As the Oregon Supreme Court stated in Josephs v. Burns, 260 Or. 493, 491 P.2d 203, 208 (1971):
 
 
 11
 It is in the interest of the public that there be a definite end to the possibility of future litigation resulting from past actions. It is a permissible constitutional legislative function to balance the possibility of outlawing legitimate claims against the public need that at some definite time there be an end to potential litigation.
 
 
 12
 In Josephs, the Oregon Supreme Court applied a statute of ultimate repose retroactively even in the absence of clear legislative direction to do so. There, the court held that O.R.S. Sec. 12.115(1) barred the plaintiffs' claims. That statute provided: "In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of." Id. The alleged injury in Josephs was the collapse of a roof in 1969. The roof had been designed and constructed by the defendants in 1951. The statute of ultimate repose (O.R.S. Sec. 12.115(1)) was enacted in 1967 and was held to cut off the plaintiffs' claim. See alsoPhilpott v. A.H. Robins Co., Inc., 710 F.2d 1422, 1425 (9th Cir.1983) (O.R.S. Sec. 30.905, eight-year statute of ultimate repose for products liability, adopted in 1977, bars claim arising from plaintiff's use of a Dalkon Shield product in 1972); Mt. Hood Radio & Television Broadcasting Corp. v. Dresser Indus., Inc., 270 Or. 690, 530 P.2d 72, 73 (1974) (O.R.S. Sec. 12.115(1), adopted in 1967, bars products liability action against defendants who in 1954 built a television tower that fell in 1971).
 
 
 13
 We conclude that the Oregon legislature intended O.R.S. Sec. 12.135(1), the contractors' statute of ultimate repose, to apply retroactively. A holding that the statute, which was enacted in 1971, does not apply retroactively would expose contractors to suit in 1993 on projects completed in 1970 and before, while shielding them from suit on projects completed in 1982. The legislature could not have intended such an bizarre result.
 
 
 14
 We conclude that the district court properly granted summary judgment in favor of the installer defendants, ACandS and Bartells.
 
 MANUFACTURER DEFENDANTS
 A. Procedural History
 
 15
 The School District also sued numerous manufacturers whose asbestos-containing products may have been installed in its school buildings. No statute of ultimate repose protects these defendants from suit.
 
 
 16
 In January 1991, most of the manufacturer defendants moved for summary judgment or partial summary judgment. In this "first round" of motions, the manufacturers contended that the School District had no evidence to establish that particular asbestos-containing products of particular manufacturers were in particular school buildings. For example, Owens-Corning Fiberglass ("OCF") contended that no evidence established that any OCF asbestos products were installed in the Whitaker school, nor in five other schools. Of the first round motions granted in favor of the manufacturers, the School District appeals six.[2]
 
 
 17
 The context in which the district court ruled on the first round of motions helps explain its decision to grant summary judgment. The motions were preceded by a discovery battle over product identification. The manufacturers had served joint interrogatories on the School District. One interrogatory requested a building-by-building breakdown showing which manufacturers' asbestos products had been installed in which buildings, accompanied by supporting data such as the location and quantity of each product within each building. The School District objected to the form of this interrogatory and refused to answer. The district court held a discovery management conference and ordered the School District to supply the manufacturers with the following information in a building-by-building list:
 
 
 18
 (1) the name of the product installed;
 
 
 19
 (2) the location of the product within the building;
 
 
 20
 (3) the amount or quantity of the product within the building; and
 
 
 21
 (4) a summary of the documentary evidence supporting the product identification.
 
 
 22
 The School District conducted a "product identification survey" and in December 1990 complied, at least in part, with the district court's order. The School District prepared lists showing each school's name, the asbestos product allegedly installed in it, and the reference number of the construction contract requiring installation of that asbestos product.
 
 
 23
 The first round motions followed. In support of the motions, each manufacturer contended discovery had shown that its asbestos products had not been installed in numerous schools. In response to some of the motions, the School District conceded that there were schools in which no asbestos products of a particular manufacturer had been installed. However, it contested most of the first round motions, including the six before us in these appeals.
 
 
 24
 The School District's opposition to the six motions relied principally on the affidavits of its attorney, Peter W. Preston. Preston stated he had reviewed the School District's contract documents and had determined that where the School District was contesting a particular manufacturer's motion, the contracts called for installation of an asbestos product in a school building. Thus, in addition to the schools identified in the interrogatory responses (which were generally not at issue in the first round motions), Preston identified other schools that contained asbestos products of the six manufacturers. Preston attached lists to his affidavits identifying the school, the contract reference number and the contract specification requiring an asbestos product. For example, in opposition to the motion of U.S. Gypsum, the list attached to one of Preston's affidavits read in part:
 
 
 25
 School Contract Number Specification
Abernathy 493 51313
 780 10065
Ainsworth 508 314
 1155 2724
 1155 1511
 1691 Keenes & Bondcrete
 
 
 26
 The district court excluded the Preston affidavits under Federal Rule of Civil Procedure 56(e), because the contract documents referred to in his affidavits were not attached to them. Rule 56(e) requires that documents relied upon in an affidavit presented in a summary judgment motion or opposition thereto be attached to the affidavit.[3] Without the Preston affidavits, and because of deficiencies in other evidence proffered by the School District,[4] the School District had no evidence to create a genuine issue of material fact in opposition to the manufacturers' motions for summary judgment.
 
 
 27
 The School District then moved for reconsideration. 139 F.R.D. 164 (1991). With this motion it submitted more than 21,000 pages of contract documents. These contract documents were presented to the court in various boxes. The district court found that the unorganized boxes of contracts did not "correspond in any meaningful manner" to the original Preston affidavits, and it denied the School District's motion for reconsideration.
 
 
 28
 Thereafter, two manufacturers filed "second round" motions for summary judgment. These motions pertained to schools not involved in the first round motions. The district court determined that the evidence supplied by the School District in opposition to the second round motions was not sufficiently probative and conflicted with the School District's earlier responses to the manufacturers' joint interrogatories. The court granted the second round motions for summary judgment.
 
 B. Exclusion of the Affidavits
 
 29
 Evidentiary questions, although decided in the context of summary judgment, are reviewed for abuse of discretion. SeeHal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1552 (9th Cir.1989) (reviewing a hearsay challenge to an affidavit under an abuse of discretion standard). The district court's decision to exclude the Preston affidavits for a failure to comply with the attachment requirement of Rule 56(e) is in the nature of a ruling excluding evidence. Accordingly, we review that decision for abuse of discretion.
 
 
 30
 When a party opposing summary judgment fails to comply with the formalities of Rule 56, a court may choose to be somewhat lenient in the exercise of its discretion to deal with the deficiency. See, e.g.,Scharf v. United States Attorney Gen., 597 F.2d 1240, 1243 (9th Cir.1979); United States v. Western Elec. Co., Inc., 337 F.2d 568, 575 (9th Cir.1964); see alsoCelotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (nonmoving party need not produce affidavits in a form admissible at trial). However, discretionary leniency does not stretch so far that Rule 56(e) becomes meaningless. SeePeterson v. United States, 694 F.2d 943, 945 (3d Cir.1982) (failure to attach key document to affidavit violated Rule 56(e) and made summary judgment improper); see alsoCanada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir.1987) (unauthenticated documents may not be relied upon to defeat a motion for summary judgment).
 
 
 31
 Here, due to the absence of other evidence, the contract documents would have been necessary to persuade a jury that asbestos was in the school buildings to which the first round of motions applied, yet the School District did not provide these documents to the district court with the Preston affidavits. Lacking this documentation, Preston's affidavits were nothing more than an attorney's argument lacking evidentiary support.
 
 
 32
 The School District contends on appeal that the attachment of the contracts would have been unduly costly or burdensome. The record indicates, however, that some partial excerpts of contracts were provided in opposition to the first round of summary judgment motions by the manufacturers. When this was done, the district court denied the manufacturers' motions as to the applicable schools. Further, thousands of pages of documents were eventually submitted with the motion for reconsideration. It was not too costly or burdensome then to provide the documents.
 
 
 33
 We conclude that the district court did not abuse its discretion when it refused to consider the Preston affidavits due to the failure to comply with Rule 56(e).
 
 
 34
 Nor did the district court abuse its discretion in excluding other affidavits for violations of Rule 56(e). In the case of Owens-Corning Fiberglass, this led to summary judgment in its favor on the issue whether its products had been installed at the Whitaker school. In the School District's opposition to this motion, it introduced the affidavit of Lon Applegate. Applegate had worked for contractors who had installed asbestos at Whitaker. He said in his affidavit that he had installed OCF products at Whitaker. He recalled installing OCF products at the school based on his "work at various schools and/or a review of the contract materials." No contracts were attached to the affidavit. The district court concluded that the Applegate affidavit violated Rule 56(e).
 
 
 35
 Unlike the attorney Preston, Applegate was an asbestos worker with personal knowledge of the installation of OCF asbestos. However, an affidavit of a witness is not exempt from Rule 56(e)'s attachment requirement simply because the affidavit references documentary evidence and personal knowledge as a source of information. If documentary evidence is cited as a source of a factual contention, Rule 56(e) requires attachment. There was no attachment. The district court did not abuse its discretion in excluding the Applegate affidavit.
 
 
 36
 Keene Corporation was granted summary judgment on the issue whether its products had been installed at nine schools. In opposition, the School District provided the affidavit of another asbestos worker, Robert Kramer. Kramer stated that a Keene product had been installed in eight of the nine schools. Relying on his visual inspection, Kramer also stated that asbestos remained in the eight schools. He further stated the information in his affidavit was derived from his "experience as an asbestos installation mechanic, my work on various schools and/or a review of the contract materials." Again, the School District failed to attach the contract materials to the affidavit. The requirement of Rule 56(e) was not met. The district court did not abuse its discretion in excluding the Kramer affidavit.
 
 
 37
 In sum, we affirm the district court's first round grants of summary judgment for OCF (6 schools), for Armstrong Cork/Armstrong World (29 schools), for U.S. Gypsum (53 schools), for Fibreboard (16 schools), for Flintkote (11 schools), and for Keene (9 schools, including Alameda and Bridlemile).
 
 C. Denial of the Motion to Reconsider
 
 38
 A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment). Under either theory our review of a denial of a motion to reconsider is for abuse of discretion. Fuller v. M.G. Jewelry, 950 F.2d 1437, 1441 (9th Cir.1991); Backlund v. Barnhart, 778 F.2d 1386, 1388 (9th Cir.1985).
 
 
 39
 The School District relied on Rule 59(e). Along with its motion to reconsider, it filed over 21,000 pages of contract documents. These documents included hundreds of construction "change orders," which allegedly indicated that the asbestos products specified in the contracts to which the change orders related were in fact used in the applicable school buildings. The School District argues this filing cured its earlier failure to comply with Rule 56(e)'s attachment requirement. It contends that the district court abused its discretion by refusing to consider the contract documents and in refusing to reverse its earlier summary judgments.
 
 
 40
 Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. SeeAll Hawaii Tours, Corp. v. Polynesian Cultural Center, 116 F.R.D. 645, 648 (D.Hawaii 1987), rev'd on other grounds, 855 F.2d 860 (9th Cir.1988). There may also be other, highly unusual, circumstances warranting reconsideration.
 
 
 41
 The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into "newly discovered evidence." SeeWaltman v. International Paper Co., 875 F.2d 468, 473-74 (5th Cir.1989) (materials available at time of filing opposition to summary judgment would not be considered with motion for reconsideration); Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1557 & n. 4 (9th Cir.1987) (court did not abuse its discretion in refusing to consider affidavits opposing summary judgment filed late); Frederick S. Wyle Professional Corp. v. Texaco, Inc., 764 F.2d 604, 609 (9th Cir.1985) (evidence available to party before it filed its opposition was not "newly discovered evidence" warranting reconsideration of summary judgment).
 
 
 42
 The district court's refusal to reconsider its earlier ruling may have been harsh. The court could have appointed a special master to conduct a thorough review of the 21,000 pages of contract documents to see which of them may have corresponded in a meaningful way to the averments of the Preston affidavits. The contract documents, however, and the process by which their relationship to the Preston affidavits could have been established, had been available to the School District from the beginning of the case. On a prior occasion, the court had found it necessary to enter an order compelling the School District to comply with the court's discovery order. The contract documents, even in their condition of disarray, were only produced after a discovery dispute. The documents were not presented to the court until the School District presented its motion for reconsideration. In this circumstance, we cannot say that the district court abused its discretion in not further indulging the School District or in not attempting by some other means to deal with the overwhelming presentation of 21,000 pages of contract documents. SeeZoslaw v. MCA Distributing Corp., 693 F.2d 870, 883 (9th Cir.1982) ("A party may not prevail in opposing a motion for summary judgment by simply overwhelming the district court with a miscellany of unorganized documentation."), cert. denied, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983).
 
 
 43
 If the School District's motion to reconsider could be deemed a Rule 60(b) motion, relief would still be unavailable. Rule 60(b) "provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which would justify relief." Fuller, 950 F.2d at 1442. None of these potential grounds for relief is applicable here.
 
 D. The Second Round of Motions
 
 44
 OCF and Fibreboard contended in support of their second round of summary judgment motions that certain of the remaining schools for which they were potentially liable had not been identified on the School District's response to the manufacturers' joint interrogatories on product identification. OCF's second round motion pertained to two schools; Fibreboard's to seven. In opposing these motions, the School District argued that asbestos manufactured by OCF and Fibreboard were in the schools despite the School District's failure to identify them in its previous interrogatory response. The court granted summary judgment in favor of OCF and Fibreboard.
 
 
 45
 OCF and Fibreboard argue we should uphold the district court's summary judgment because, according to them, summary judgment was entered as a sanction against the School District because it failed to comply with the court's discovery orders as to product identification. This argument lacks merit. There is no indication in the record that the School District was sanctioned.
 
 
 46
 OCF and Fibreboard also contend that summary judgment was proper because the affidavits the School District submitted with its opposition to their motions conflicted with the School District's earlier interrogatory response, and the School District should be bound by the earlier response which failed to identify the subject schools as schools containing OCF and Fibreboard asbestos products. In support of this argument, OCF and Fibreboard rely on cases in which we have held that a party should not be able to substitute an affidavit alleging helpful facts for earlier deposition testimony harmful to its case in order to avoid summary judgment. SeeFoster v. Arcata Assocs., Inc., 772 F.2d 1453, 1462 (9th Cir.1985); Radobenko v. Automated Equipment Corp., 520 F.2d 540, 544 (9th Cir.1975).
 
 
 47
 The Foster-Radobenko rule applies to conflicts between affidavits and interrogatory responses as well as deposition testimony. However, we have held that Foster-Radobenko should be applied with caution. Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir.1991). "[T]he Foster-Radobenko rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony." Id. at 266-67. The district court must make a finding of fact that the affidavit was a "sham." Id.
 
 
 48
 Here, the district court ruled on the second round motions without the benefit of our decision in Kennedy. It therefore made no finding that the affidavits filed by the School District were or were not "sham" affidavits generated solely in order to create a genuine issue of material fact.
 
 
 49
 However, this is not the end of our analysis. Summary judgment is not precluded simply because there is a dispute of some facts in a case. To defeat a motion for summary judgment, the nonmoving party must present facts in support of the issues on which it would bear the burden of proof at trial, there must be probative evidence of those facts, and the facts must be uncontroverted or at least create a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (citations omitted)). When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting First Nat. Bank v. City Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)).
 
 
 50
 OCF and Fibreboard have requested summary judgment as to those schools where none of their products were identified in the School District's interrogatory response. The response is powerful evidence that neither Fibreboard nor OCF asbestos-containing products are in those schools. We examine the affidavits presented by the School District to determine if the affidavits, considered together with the School District's contrary interrogatory response, present a genuine factual dispute of a material issue.
 
 
 51
 The School District contends that an OCF asbestos product was installed at Edwards school. It relies on the affidavit of Robert Kramer, an asbestos worker who recalls installing an OCF asbestos product at Edwards. Kramer's affidavit, however, is based on his distant memory. More significantly, it contradicts the School District's interrogatory response which was based on the School District's examination of applicable contract documents. Kramer's testimony is emasculated by the School District's clear interrogatory response directly to the contrary. His affidavit, therefore, does not pass the "significantly probative" test of Liberty Lobby. No reasonable juror could rely upon it to conclude that OCF asbestos was installed at the Edwards school. Thus, there is no genuine issue for trial on this issue and summary judgment in favor of OCF with regard to the Edwards school was proper.
 
 
 52
 The School District contends that an OCF asbestos product was installed at Jefferson school. It relies on the affidavit of Earl Claus, an asbestos worker. Clause recalled installing OCF asbestos at Jefferson in 1958. The School District's earlier, detailed interrogatory response, however, states that Armstrong asbestos products and OCF non-asbestos products were installed at Jefferson. Claus's affidavit, based on distant memory, is not significantly probative in light of the contradictory interrogatory response. Summary judgment as to the Jefferson school was appropriate.
 
 
 53
 The School District contends that Fibreboard asbestos products were installed at Bridger, Gregory Heights, Monroe, Sellwood and Woodmere schools. As evidence, the School District introduced "subcontracts" between the School District and Columbia Asbestos Supply. These "subcontracts" allegedly require the installation of asbestos at these five schools. Columbia was the exclusive distributor for Fibreboard during the relevant time. However, the "subcontracts" are not probative evidence. These documents were not subcontracts at all, but were merely proposals for work to be done by Columbia. Additionally, the allegation that Fibreboard asbestos was in the five schools contradicted the School District's earlier interrogatory response. We conclude that the district court correctly granted summary judgment in favor of Fibreboard as to these five schools.
 
 
 54
 The School District contends that a Fibreboard asbestos product was installed at the Duniway school. In support of this contention, the School District introduced the Fibreboard-Columbia Asbestos Supply exclusive distributorship contracts and the affidavit of Harold Davis, a worker who had installed asbestos for Columbia at the Duniway school. Davis stated that he had installed asbestos products at Duniway in 1948 or 1949, but he did not say he installed any Fibreboard product. Further, the exclusive distributorship contract between Fibreboard and Columbia did not begin until 1951. Given this evidence, and the School District's contradictory interrogatory response, no reasonable juror could conclude that a Fibreboard product was installed at Duniway.
 
 
 55
 Finally, the School District contends that a Fibreboard product was installed at the Sitton school. The School District introduced an affidavit from Robert Kramer. In 1991, Kramer inspected the Sitton school and found an asbestos cement product called Kaylo inside. Kaylo was manufactured by Fibreboard from 1960 to 1971, and by OCF before that. The Kramer affidavit does not disclose when the asbestos was installed or which of the two companies manufactured it. Further, the affidavit conflicts with the School District's earlier interrogatory response which exonerated Fibreboard from having provided asbestos at Sitton. Summary judgment was appropriate.
 
 CONCLUSION
 
 56
 The district court's summary judgments in favor of ACandS and Bartells pursuant to Oregon's statute of ultimate repose for contractors, O.R.S. Sec. 12.135(1), are affirmed. The district court's summary judgments and partial summary judgments in favor of OCF, Fibreboard, Armstrong, Keene, U.S. Gypsum and Flintkote are also affirmed, as is the district court's order denying reconsideration of its summary judgments.
 
 
 57
 AFFIRMED.
 
 FERGUSON, Circuit Judge, dissenting:
 
 58
 I dissent from the majority's opinion both as to the contractors and the six "first round" manufacturers. Regarding the former, the majority misapplies Oregon law when it retroactively applies the statute of repose. Regarding the latter, the majority mistakenly concludes that the district court did not abuse its discretion when it ruled against the School District at summary judgment based on an unprecedented application of Rule 56(e).
 
 I.
 
 59
 The majority concludes that the Oregon statute of repose applies retroactively to bar the School District's claims against the contractors. Yet the rule applied in Oregon courts is that "in the absence of legislative direction to the contrary ... a statute that affects 'legal rights and obligations arising out of past actions' can only be applied prospectively." Bergstad v. Thoren, 86 Or.App. 70, 738 P.2d 223 (1987). The statute of repose at issue here does not provide for retroactive application. See Or.Rev.Stat. Sec. 12.135(1). Thus the correct answer plainly is that the statute does not apply retroactively.
 
 
 60
 The majority supports its opposite conclusion by citing cases in which Oregon courts have applied statutes of repose retroactively. However, none of these cases address the issue of retroactivity. SeeJosephs v. Burns, 260 Or. 493, 491 P.2d 203, 204 (1971); Mt. Hood Radio & Television Broadcasting Corp. v. Dresser Indus., Inc., 270 Or. 690, 530 P.2d 72, 73 (1974). Thus these cases are insufficient to counter the weight of Oregon authority to the contrary. SeeBoone v. Wright, 314 Or. 135, 836 P.2d 727, 729 (1992) ("Oregon has followed this well recognized rule for over a century: A statute that shortens a limitations period applies prospectively if the legislature does not clearly express a contrary intent.") Furthermore, at least one other state facing the same issue has explicitly decided that statutes of repose cannot be applied retroactively. SeeLotter v. Clark County, 106 Nev. 366, 793 P.2d 1320, 1323 (1990).
 
 
 61
 Finally, the majority's policy argument is unconvincing. The "public" does not benefit if contractors can escape liability. To the contrary, the public may well suffer, as it does in this case, by having to pay for things like the removal of cancer causing materials from public school buildings. Furthermore, Oregon has expressly exempted products liability claims for damages from asbestos-related disease from statutes of repose limitations. See Or.Rev.Stat. Secs. 30.905, 907. Although this exemption covers only personal injury claims and thus does not apply to the School District's cause of action, it is relevant as evidence that the Oregon legislature has considered the majority's policy arguments and rejected them in the asbestos context.
 
 II.
 
 62
 I must also differ with the majority's conclusion that the district court did not abuse its discretion when it excluded the affidavits of Peter Preston because the contract specifications referred to in his affidavits were not attached, as required by Fed.R.Civ.P. 56(e). We follow the rule that the affidavits of a party opposing summary judgment are treated with lenience. SeeScharf v. United States, 597 F.2d 1240, 1243 (9th Cir.1979); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir.1985) ("as a general principle we treat the opposing party's papers more indulgently than the moving party's papers.")
 
 
 63
 Despite acknowledging this rule, the majority fails to apply it. The majority cites several cases in support of its conclusion that the district court did not abuse its discretion, but these cases provide no support for deviating from the rule of leniency. In Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1552 (9th Cir.1989), we upheld a district court's grant of summary judgment despite the district court's failure to require compliance with Rule 56(e). In Peterson v. United States, 694 F.2d 943, 945 (3d Cir.1982), the Third Circuit reversed a grant of summary judgment for the government when it failed to comply with Rule 56(e). Finally, Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir.1987) is not directly on point, because the issue there was whether unauthenticated documents could be relied on to defeat a motion for summary judgment.
 
 
 64
 Here, the only defect in the Preston affidavits was the failure to attach the 21,000 pages of contract documents. The School District would have been wiser to attach the documents in the first place, but its failure to do so should not prompt the harsh result of summary judgment. SeeJackson v. Mississippi, 644 F.2d 1142, 1144 (5th Cir.1981) ("Summary judgment is not an automatic sanction for non-compliance with Rule 56(e).").
 
 
 65
 The Preston affidavits were apparently specific as to each school and each contractor, and clearly would raise a genuine issue of fact as to at least some of the contractors. Where the contract specifications referred to in the affidavits require the use of a single asbestos product, it is evident that summary judgment would be improper.
 
 
 66
 After the district court granted summary judgment, the School District copied the contract documents, submitted them as attachments to the Preston affidavits, and moved the court to reconsider its entry of summary judgment. The district court refused, finding that the evidence was not "newly submitted," and that the documents were not arranged in compliance with Rule 56(e). The district court did not review any of the attached documents. Again, the district court abused its discretion.
 
 
 67
 The documents were not disorganized. They were voluminous, but that alone should not exclude them from consideration. As the district court was well aware, there were close to one hundred school buildings involved, as well as a multitude of manufacturers. Numerous documents were therefore inevitable. The School District attached an addendum to its motion that served as a table of contents for the documents and organized the documents by contract number and school building. Therefore the district court presumably could have referenced the contracts mentioned in each affidavit without undue difficulty. CompareZoslaw v. MCA Distributing Corp., 693 F.2d 870, 883 (9th Cir.1982) (appellant presented the court with "a miscellany of unorganized documentation" which was not accompanied by affidavits explaining the contents).
 
 
 68
 While I am sympathetic to the district court's work load, I cannot conclude that it is within the district court's discretion to frustrate prematurely a litigant's claim simply because supporting documents require a reasonable amount of effort to peruse.
 
 
 69
 I respectfully dissent.
 
 
 
 [1]
 Section 12.135(1) reads:
 An action against a person, whether in contract, tort or otherwise, arising from such person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof, or from such person having furnished the design, planning, surveying, architectural or engineering services for such improvement, shall be commenced within the applicable period of limitation otherwise established by law; but in any event such action shall be commenced within 10 years from substantial completion or abandonment of such construction, alteration or repair of the improvement to real property.
 
 
 [2]
 Twelve manufacturers filed for summary judgment or partial summary judgment. Nine motions were granted by the district court in their entirety, two were granted in part and denied in part, and one was denied. The School District appeals six of the nine
 
 
 [3]
 Rule 56(e) reads in part:
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.
 Fed.R.Civ.P. 56(e) (emphasis added).
 
 
 [4]
 In two instances, former asbestos workers also supplied affidavits indicating that particular products were in some school buildings. Because these affidavits referenced contract documents which were not attached, the district court excluded them as well